J-S40005-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN RE: JOHN MARSHALL PAYNE, III | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| APPEAL OF: COMMONWEALTH OF PENNSYLVANIA | |
| | No. 1113 MDA 2013 |

Appeal from the Order Entered May 22, 2013
In the Court of Common Pleas of York County
Criminal Division at No(s): CP-67-MD-1000291-1986

BEFORE:  BENDER, P.J.E., BOWES, AND PANELLA, JJ.

DISSENTING MEMORANDUM BY BOWES, J.:     **FILED OCTOBER 03, 2014**

As I believe that the trial court erred in granting Appellee's written application for DNA testing pursuant to 42 Pa.C.S § 9543.1, I respectfully dissent.

The majority sufficiently stated the facts, procedural history, and the applicable standard of review.  Accordingly, I do not revisit those items herein.  I would note, however, that a jury convicted Appellee based primarily upon the testimony of three witnesses who stated that Appellee informed them that he was present during the murder of ninety-year-old Elsie Rishel.  Deborah Wallick testified that Appellee told her that he watched two male accomplices beat Ms. Rishel with a telephone.  N.T., 8/18/86 (Vol II), at 481, 488.  However, Sonny Olgesby and Chris Gibson both testified

that Appellee confessed to them separately that he killed Ms. Rishel. *Id*. at 525, 546-48. The Commonwealth also elicited evidence from Appellee that he contacted Ms. Wallick four days before the trial and attempted to influence her testimony in his favor. *Id*. at 631-33.

The Commonwealth's evidence was not seamless. The details of the murder that Appellee allegedly provided to the three witnesses varied, and Appellee impeached aspects of all three witnesses' credibility. For example, Ms. Wallick had a prior conviction for hindering prosecution in an unrelated case, and Olgesby and Gibson both received plea deals in unrelated cases in return for their testimony against Appellee. *Id*. at 489-90, 520-21, 550-51.[1] Based upon this evidence, the jury convicted Appellee of felony murder, aggravated assault, burglary, and criminal conspiracy.

Appellee filed a petition to test the telephone that is believed to be the murder weapon for exculpatory DNA evidence. In relevant part, the statute

---

[1] The trial court found that Appellee presented evidence to imply that Olgesby and Gibson discussed the specifics of his case before Gibson reported Appellee's confession to authorities. Trial Court Opinion, 5/22/13, at 7. The extent of that testimony was that Mr. Gibson could have overheard details of Appellee's case while he was in the prison law library on the Friday prior to the start of trial and that the next day, Gibson and Olgesby had a secretive conversation about an unknown topic while walking around the perimeter of the prison's exercise yard. N.T., 8/18/86 (Vol II), at 580. I observe that Mr. Olgesby informed authorities of Appellee's confession as early as January 1986. *Id*. at 540-541.

governing post-conviction DNA testing of specific evidence provides as follows:

> **(c) Requirements**.—In any motion under subsection (a) [regarding forensic DNA testing], under penalty of perjury, the applicant shall:
>
> > (1) (i) specify the evidence to be tested;
> >
> > . . . .
> >
> > (2) (i) assert the applicant's actual innocence of the offense for which the applicant was convicted; and
> >
> > (3) present a prima facie case demonstrating that the:
> >
> > > (i) identity of or the participation in the crime by the perpetrator was at issue in the proceedings that resulted in the applicant's conviction and sentencing; and
> > >
> > > (ii) DNA testing of the specific evidence, assuming exculpatory results, would establish:
> > >
> > > > (A) the applicant's actual innocence of the offense for which the applicant was convicted;
> > > >
> > > > . . . .
>
> **(d) Order.**—
>
> > . . . .
> >
> > (2) The court shall not order the testing requested . . . if, after review of the record of the applicant's trial, the court determines that there is no reasonable possibility that the testing would produce exculpatory evidence that:
> >
> > > (i) would establish the applicant's actual innocence of the offense for which the applicant was convicted[.]

42 Pa.C.S. § 9543.1.

Thus, in order to prevail on an application for DNA testing, as a threshold matter, Appellee must adduce *prima facie* evidence that, assuming exculpatory results, the evidence would demonstrate his actual innocence of the offense for which he was convicted. In **Commonwealth v. Conway**, 14 A.3d 101, 109 (Pa.Super. 2011) (quoting **Schlup v. Delo**, 513 U.S. 298, 327 (1995)), we explained that actual innocence in this context and in the context of § 9543.1(d)(2)(i), is evidence that "make[s] it 'more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt.'" We concluded, "this standard requires a reviewing court 'to make a probabilistic determination about what reasonable, properly instructed jurors would do,' if presented with the new evidence." **Id**. (quoting **Schlup**, **supra** at 329).

Unlike the trial court and by implication the majority, who affirms on the basis of the trial court opinion, I do not believe that the Commonwealth's evidence was so fragile that it could not withstand new exculpatory evidence that confirmed that DNA from someone else was discovered on the telephone used to commit the murder. Although the Commonwealth's case against Appellee was based entirely on circumstantial evidence, three witness testified that Appellee confessed about his role in the criminal conspiracy. Moreover, as a further demonstration of guilt, Appellee admitted that he contacted one Commonwealth witness and attempted to influence her testimony in his favor. Thus, in contrast to the trial court, I do not

believe that Appellee's request for DNA testing satisfied the threshold requirement of producing a *prima facie* case that, assuming the exculpatory results of the DNA testing, *i.e.*, the absence of his DNA or the presence of someone else, the evidence would demonstrate his actual innocence of felony murder.   Accordingly, I would reverse the order granting the requested relief.

Additionally, I agree with the Commonwealth that the trial court's consideration of extraneous reasons for granting Appellee's application was legal error.   In the concomitant opinion supporting the May 22, 2013 order granting relief, after discussing the appropriate legal standards and the circumstances militating for and against granting DNA testing, the trial court concluded, "the very best reason to test the evidence" was to possibly determine the identity of the other assailants.   Trial Court Opinion, 5/22/13 at 12.   The trial court conceded that this unintended use of DNA testing "[p]erhaps . . . would be a perversion of the PCRA statute," but it nevertheless admonished the Commonwealth for opposing an application of the statute that would bring the additional conspirators to justice.   *Id*. at 13. The court opined, "In point of fact, were the Commonwealth to appeal a ruling in favor of testing it might be inadvertently aiding other perpetrators to escape culpability."   *Id*. at 13.

In response to the Commonwealth's Rule 1925(b) statement highlighting the court's suggested misuse of the DNA testing provisions, the

trial court authored a Rule 1925(a) opinion, which indicated, in pertinent part, that its prior comment was merely hyperbole. The trial court explained,

> In labeling the identification of uncharged coconspirators 'the very best reason to test the evidence,' this Court was perhaps too carless with language. At the time of drafting, the Court believed it was obvious that the best reason for taking action is not synonymous with the legally correct reason for that same action.

Rule 1925(a) Opinion, 8/15/13, at 14-15. Thus, the trial court maintained that the error was harmless.

While the majority declines to address this aspect of the Commonwealth's argument, for the following reasons, I disagree with the proposition that the court's *ex post facto* explanation of its positon as semantic flair rendered the error harmless. Although it is beyond argument that the trial court set forth the statutory framework outlined in § 9543.1(c) and (d), and endeavored to apply relevant provisions appropriately, it is apparent to me that the court's preoccupation with the surplus benefits of DNA testing in this case infiltrated its legal analysis and affected its decisions. Indeed, immediately prior to ascribing its statement to hyperbole in the Rule 1925(a) opinion, the court repeated the statement regarding the suggested misapplication of the DNA testing provisions verbatim in the portion of the Rule 1925(a) opinion that addressed the **merits** of Appellee's petition. Moreover, the trial court was either unable or unwilling to explain

its admonition of the Commonwealth for exercising its right to appeal the adverse ruling. Hence, notwithstanding the trial court's protestations, it is apparent that the trial court failed to disentangle the two distinct objectives that it proposed for the DNA testing. As the trial court was occupied with the tangential benefit that DNA testing would have in this case, no matter how well-intended, the trial court's consideration of the potential benefit was improper, and I believe that the consideration tainted its decision to grant relief.

Additionally, I disagree with the majority's characterization of the Commonwealth's countervailing argument against DNA testing. While the majority branded the Commonwealth's position as "dependent on a misinterpretation of the 'actual innocence' standard – that 'actual innocence' must be proven affirmatively." Majority memorandum at 5. In reality, however, the majority and the Commonwealth invoke the identical definition of actual innocence and cite the same legal authority for their shared positon, *i.e.*, **Conway**, **supra** at 109 (quotations omitted) ("the newly discovered evidence must make it more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt."). Thus, the majority's assessment of the Commonwealth's supposedly misleading definition of actual innocence is unpersuasive.

Furthermore, I stress that the crux of the Commonwealth's legal argument, that assuming the DNA test produces exculpatory evidence, such

as the identification of a perpetrator other than Appellee, simply echoes the well-ensconced maxim that the absence of evidence is not evidence of absence. Thus, as the Commonwealth cogently explained, where, as here, a person is convicted of felony murder for his role in a criminal conspiracy without the aid of any physical evidence linking him to the crime, it is obvious that the jury was not swayed by the absence of physical evidence in the first instance. Hence, it follows that "new" physical evidence that augments the dearth of incriminating physical evidence or, at best, implicates a co-conspirator, is not *ipso facto* grounds to find that it is more likely than not that no reasonable juror with knowledge of the new evidence would convict the defendant.

Finally, I am not convinced by the majority's imaginative hypothetical in which the DNA evidence reveals that one of the Commonwealth's witnesses actually participated in the burglary and murder. The majority muses, "such a result would certainly call into question that witness's credibility above and beyond their preexisting credibility problems. It would also explain their familiarity with the likely murder weapon and demonstrate a motive to inculpate Appellee." Majority memorandum at 7. This fanciful theory is unpersuasive for at least two reasons. First, the proposed scenario is unmitigated speculation, and exactly nothing in the certified record supports the suggestion, much less the possibility, that any of the Commonwealth's witnesses' involvement in the underlying crime extended

beyond hearing Appellee's confession. Moreover, the majority overlooks that the potential identification and implication of one of the three incriminating witnesses under this imaginative setup leaves two remaining witnesses whose incriminating testimony is unaffected. Ultimately, I believe that even under this best-case scenario advanced by the majority, the trial court still could not reasonably find that properly-instructed jurors would acquit Appellee if presented with the new evidence. Accordingly, for all of the foregoing reasons, I respectfully dissent.